UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

      KATHY L. AUSTIN,

                                  Case No. 15-10401
                                  Chapter 13

                        Debtor.
_____

APPEARANCES:

Michael J. Toomey, Esq.
The Toomey Law Firm, PLLC
*Attorney for Debtor*
One South Western Plaza
PO Box 2144
Glens Falls, New York 12801

Andrea E. Celli, Esq.
*Chapter 13 Standing Trustee*
7 Southwoods Boulevard
Albany, New York 12211

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

      The current matter before the Court is the Chapter 13 Standing Trustee's ("Trustee")

objection to the proposed distribution of proceeds from the sale of Kathy L. Austin's ("Austin" or

"Debtor") property located at 145 Heath Road, Corinth, New York ("the Property"). The Court

has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[1]

## FACTS

      Based on the Court's docket and the "Joint Statement of Stipulated Facts and Issues of

Law" ("Joint Statement") (ECF No. 191), the following constitutes the Court's finding of facts:

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2021).

1. On August 7, 2010, a "Residential Real Estate Contract" ("the Purchase Contract") and accompanying disclosures for the sale of the Property were executed by Walter F. Wood ("Walter") as Buyer and on August 12, 2010, the Purchase Contract was accepted by Brenda L. Beratis ("Beratis") as Seller. (Joint Statement at ¶ 22, Exhibit "A").

2. On August 7, 2010, a deposit was paid by Walter and his wife, Shirley J. Wood ("Shirley"), (collectively "the Woods") in the amount of $1,000.00 to Realty USA Saratoga towards the purchase of the Property.[2] (Joint Statement at ¶ 23, Exhibit "B").

3. The Woods utilized proceeds from the sale of their previous home to pay the remaining amount due of the Property's $40,000.00 purchase price. (ECF No. 196, Trustee's Memorandum of Law, p. 10).

4. On August 30, 2010, an "Addendum to Contract for Purchase and Sale" ("the Addendum") between Walter and Beratis was executed. The Addendum provides in relevant part, "It is hereby agreed by the parties that: The Buyer shall assign his interest and rights in the contract to Kathy L. Austin, . . . and giving simultaneously a life estate to Walter F. Wood and Shirley J. Wood, his wife." (Joint Statement at ¶ 24, Exhibit "C").

5. On August 30, 2010, a "Real Property Transfer Report"[3] and a "Combined Real Estate Transfer Tax Report, Credit Line Mortgage Certificate, and Certification of Exemption from the Payment of Estimated Personal Income Tax"[4] (collectively the "Purchase

---

[2] This Court notes the deposit check includes both Walter's and Shirley's name.

[3] State of New York, State Board of Real Property Services, form RP-5217.

[4] New York State Department of Taxation and Finance, form TP-584.

Documents") were executed between Beratis as Grantor and Walter, Shirley and Austin as Grantees.[5] (Joint Statement at ¶¶ 25 & 26, Exhibits "D" & "E").

6. After its purchase, the Woods moved into the Property "on or about August 30, 2010." (ECF No. 196, Trustee's Memorandum of Law, p. 9).

7. A Warranty Deed dated August 30, 2010, (the "2010 Deed") between Beratis as Grantor and Austin as Grantee was recorded on September 30, 2010.[6] (Joint Statement at ¶ 28, Exhibit "G").

8. The 2010 Deed contains the following language, "THIS CONVEYANCE is subject to a life estate given simultaneously herewith to Walter F. Wood and Shirley J. Wood, his wife." Below Austin's signature, the deed contains the phrase, "Kathy L. Austin, confirming Life Estate To Walter F. Wood and Shirley J. Wood." (Joint Statement at ¶¶ 29 & 31, Exhibit "G").

9. On June 6, 2014, a subsequent deed (the "2014 Deed") was executed by Austin as Grantor to Sharon L. Winchell and Austin as joint tenants with right of survivorship and recorded on June 20, 2014. The 2010 and 2014 Deeds contain identical life estate clauses. (Joint Statement at ¶¶ 37 & 38, Exhibit "H").

10. The Woods were not parties to, did not sign and are not listed as "Grantees" on either the 2010 or 2014 Deed. (Joint Statement at ¶¶ 32-34 & 39).

11. On March 2, 2015, the Debtor filed a Chapter 7 voluntary petition for relief. (ECF No. 1).

12. In her schedules, the Debtor lists the Property subject to a life estate in favor of the Woods. *Id.*

---

[5] The Court notes an "Owner's Policy of Title Insurance" lists the Property's insured owner as Austin. (Joint Statement at ¶ 27, Exhibit "F").

[6] The Joint Statement incorrectly states the 2010 Deed was recorded on September 30, 2020.

13. On July 10, 2015, this Court sustained the Chapter 7 Trustee's objection to the Debtor's claimed homestead exemption in the Property. (ECF No. 46).

14. On May 18, 2016, while administering assets of the estate, the Chapter 7 Trustee filed a "Motion to Compel" seeking access to the Property for an inspection by a realtor. (ECF No. 82).

15. On June 22, 2016, the Debtor filed a "Motion to Convert Case to Chapter 13" so "her parents are not displaced from their home." (ECF No. 88, p. 1 at ¶ 7).

16. On September 12, 2016, the Court approved a "Consent Order Granting Motion to Convert Case to Chapter 13." (ECF No. 98).

17. On April 3, 2017, the Debtor's Chapter 13 Plan was confirmed. (ECF No. 111).

18. On June 25, 2020, the Debtor filed an "Attorney's Affirmation in Support of a Motion for an Order Permitting the Sale of Real Property" pursuant to § 363(b). (ECF No. 178).

19. On August 7, 2020, this Court issued an Interim Order approving the sale of the Property for $50,000.00 to be distributed as follows: $22,591.00 to be held in escrow by Mark Delsignore, Esq., Borgos & Delsignore, pending this Court's determination of the current matter; $13,000.00 to Austin;[7] and $10,759.00 to the Trustee for distribution to creditors.[8] (ECF No. 186).

20. On December 18, 2020, this Court issued a Briefing Order on the limited question of whether the Woods held a valid life estate in the Property. The Briefing Order directed the Trustee to file papers by March 19, 2021. The Debtor was to file a reply by April 23, 2021. (ECF No. 193).

---

[7] Austin received this $13,000.00 pursuant to her wildcard exemption.

[8] The remaining sale proceeds paid a $3,000.00 realtor fee to the broker, Howard Hanna Real Estate, and an attorney fee of $650.00 to Borgos & Delsignore.

21. On March 26, 2021,[9] the Trustee filed the "Chapter 13 Trustee's Memorandum of Law." (ECF No. 196).

22. On May 13, 2021,[10] the Debtor filed the "Plaintiff's Reply Brief" and this matter was fully submitted to this Court. (ECF No. 200).

## ARGUMENTS

The Trustee asserts that the Wood's life estate is void. The Trustee relies upon *Estate of Thomson v. Wade*, 69 N.Y.2d 570, 573-74 (1987), which states, "The long-accepted rule in this State holds that a deed with a reservation or exception by the grantor in favor of a third party, a so-called 'stranger to the deed', does not create a valid interest in favor of that third party." The Trustee contends the Woods should not receive any sale proceeds "prior to payment of all unsecured claims in full in this case." (ECF No. 182, p. 2 at ¶ 7).

Austin argues a reservation in a deed in favor of a third party is not void when the third party is the true grantee. (ECF No. 200). Austin relies upon *Nield v. Jupiter*, 162 N.Y.S. 465, 466 (App. Div. 3d 1916), *aff'd*, 226 N.Y. 594 (1919), where, based upon a factual inquiry, the Court found a third party to a deed to be the "real grantee"[11] thereby nullifying the "stranger to the deed" rule. In the alternative, Austin asks this Court to apply its inherent authority pursuant to 11 U.S.C. § 105 as "technical consideration should not prevent substantial justice from being done." (ECF No. 200). Austin requests the Woods receive "approximately half of the funds" from the Property's sale to compensate them. *Id.*

---

[9] The Trustee was granted an extension of time to file papers to March 29, 2021. (ECF No. 195).

[10] The Debtor was granted an extension of time to file a reply to May 14, 2021. (ECF No. 199).

[11] This Court notes "real grantee" and "true grantee" are used interchangeably. *Compare Nield*, 162 N.Y.S. at 466 *with Clearmont Prop., LLC v. Eisner*, 872 N.Y.S.2d 725, 728 (App. Div. 3d 2009).

## DISCUSSION

In a bankruptcy proceeding, courts look to state law for "the determination of property rights in the assets of a bankrupt's estate . . . ." *Butner v. United States*, 440 U.S. 48, 54 (1979). "Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id*. at 55 (quoting *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961)).

Notwithstanding New York's adherence to the "stranger to the deed" rule, "it is not universally applied." *Peters v. Smolian*, 12 N.Y.S.3d 824, 833 (Sup. Ct. 2015) (declining to extend the "stranger to the deed" rule to the right of first refusal). Further, an exception to this general rule exists "when the third party is found to be the real grantee under the deed." *Clearmont Prop.*, 872 N.Y.S.2d at 728 (finding a third party to a quitclaim deed to be a "true grantee") (citing *Nield*, 162 N.Y.S. 465).

## I.    THE FACTS ARE SUFFICIENT TO CONCLUDE THE WOODS ARE THE TRUE GRANTEES UNDER THE 2010 DEED, RENDERING THE "STRANGER TO THE DEED" RULE INAPPLICABLE.

The finding that the Woods are in fact the true grantees is supported by the *Nield* case. Real property was conveyed to Jesse J. Nield ("Jesse") after its purchase was initiated, negotiated and executed by Jesse's father, Elisha L. Nield ("Elisha"). 162 N.Y.S. at 465-66. The deed contains the following relevant language, "Elisha L. Nield shall be the trustee of the premises hereby conveyed to Jesse J. Nield, and that the same shall be at his disposal and under his control during his lifetime, unless sooner sold under the direction of the said Elisha L. Nield." *Id*. Importantly, the Court added, "Jesse knew nothing about the transaction at the time, took no part in it, and paid no part of the consideration." *Id*. at 466. At the time the deed was delivered to Elisha, he recorded

6

it and "took immediate possession of the premises and assumed complete control over the same." *Id.* Despite Elisha never being on the chain of title, the New York Supreme Court, Appellate Division, Third Department, determined the evidence "discloses that Elisha L. Nield was not a stranger to the conveyance, but was, in fact, the real grantee. Therefore[,] the rule that a reservation or exception in a deed in favor of a stranger is void does not apply here." *Id.*

The facts in *Nield* are nearly identical to the present case. Austin did not initiate, negotiate or execute the Purchase Contract.[12] On the 2010 Deed, Austin is the only named grantee but specific, additional language sought to create an ownership interest for the Woods.[13] Although Austin did participate in the execution of the deed, she provided no consideration towards the purchase.[14] Further, once the purchase was finalized Austin did not take possession or exercise control over the Property.[15] Instead, it was the Woods who provided the purchase money and moved into the Property.[16]

The Trustee argues *Thomson* governs as the Woods "were 'strangers' to the August 30, 2010[,] deed and could not reserve . . . a life estate under the holding in *Matter of Estate of Thomson* . . . ." (ECF No. 196, Trustee's Memorandum of Law, p. 8). However, the facts in *Thomson* are fully distinguishable from the current action. First, *Thomson* is a "declaratory judgment action" where the claim to an easement over defendant's property comes "by express grant, relying not on [plaintiff's] own deed to the annex parcel, but on the purported *intent* of [the grantor] that the

---

[12] *See supra* fact 1.

[13] *Supra* facts 7 & 8.

[14] *See supra* facts 2 & 3.

[15] *See supra* facts 6 & 13. The Debtor did not live in the Property at the time of its purchase or when filing her bankruptcy petition. It is unclear if Austin ever resided in the Property.

[16] *Supra* facts 3 & 6.

annex parcel benefit from an easement over defendant's property . . . ." 69 N.Y.2d at 573 (emphasis added). Moreover, *Thomson* involves a dispute over an easement appurtenant, not a life estate.

This Court finds *Thomson* inapplicable because the Woods rely on the "true grantee" exception expressed in *Nield*, not on the "intent" of the parties involved. In fact, much of its application "suggests that the rule enunciated in *Thomson* is limited to easements (a reservation or exception) . . ." and should not govern other types of property interests. *Nature Conservancy v. Congel*, 689 N.Y.S.2d 317, 320 (App. Div. 4th 1999) (declining to extend the "stranger to the deed" rule to a restrictive covenant).

The Trustee's argument that the "stranger to the deed" rule extends to the context of life estates is rooted in *Sganga v. Grund*, 766 N.Y.S.2d 585 (App. Div. 2d 2003).[17] The *Sganga* opinion, however, is less than three hundred words and provides no analysis exploring whether the "true grantee" exception to the rule was present. In *Sganga*, Sarah Grund transferred by deed her sole title to the plaintiffs "subject to a retained life estate" in herself and her husband, Mr. Grund. 766 N.Y.S.2d at 585-86. After her death, Mr. Grund refused to vacate the premises on the grounds that he held a valid life estate in the property. *Id.* at 586. Without any further analysis, the New York Supreme Court, Appellate Division, Second Department, applied *Thomson* and held, "The reservation of a life estate in the deed did not create a valid interest in favor of [Mr. Grund], who was a 'stranger to the deed' . . . ." 766 N.Y.S.2d at 586.

Simply stated, this Court respectfully declines to apply *Sganga* as blanket support for the proposition that the "stranger to the deed" rule always invalidates a life estate belonging to an individual outside the chain of title for two reasons. First, the *Sganga* court failed to acknowledge

---

[17] This Court notes the situs of the Property is in the Third Department (*Nield*), not the Second Department (*Sganga*).

the existence of the "true grantee" exception. Second, in *Sganga*, other than the deed and Mr. Grund's oral testimony, there were no additional facts upon which the court could base a finding. Brief of Plaintiffs-Appellants, 2002 WL 32376779, at *2-3 (N.Y. App. Div. 2d 2003). In sharp contrast to *Sganga*, the Woods have provided sufficient, objective evidence to establish themselves as the true grantees.[18]

## CONCLUSION

In sum, the Court finds the Woods were the true grantees under the 2010 Deed. As such, the "stranger to the deed" rule is not applicable and does not void out the life estate.[19] The Property came into the bankruptcy estate subject to the Woods interest and they are entitled to a portion of the sale proceeds.

This Court will conduct a § 105 Hearing to discuss the appropriate compensation due to the Woods at **11:45 a.m.** on **January 6, 2022.**

Dated: December 29, 2021                    /s/ Robert E. Littlefield, Jr.
       Albany, New York                    Robert E. Littlefield, Jr.
                                           United States Bankruptcy Judge

---

[18] In addition to the persuasive evidence discussed *supra*, the Woods are described as "grantees" on the Purchase Documents executed in tandem with the Purchase Contract, the Purchase Addendum, and the 2010 Deed. *Supra* fact 5.

[19] Finding the Woods held a valid life estate, the Court need not examine exercising its § 105 power.